UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XOCHILTH BERRIOS BERRIOS,<br><br>    Plaintiff,<br><br>    v.<br><br>SERGIO ALBARRAN et al.,<br><br>    Defendants. | No. 1:25-cv-01544-TLN-CSK<br><br>**ORDER** |

       This matter is before the Court on Petitioner Xochilth Berrios Berrios's ("Petitioner") Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2.) For the reasons set forth below, Petitioner's Motion is GRANTED.

///

///

///

1

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a thirty-nine-year-old native and citizen of Nicaragua who entered the United States with her wife in April 2022. (ECF No. 2 ¶ 5.) Petitioner claimed she feared being returned to Nicaragua given her membership in the LGBTQ community and due to her political opinion. (*Id.* ¶ 6.) Customs and Border Protection ("CBP") referred her case to U.S. Citizenship and Immigration Services ("USCIS") and released her from custody under an Order of Supervision ("OSUP") in May 2022. (*Id.*) Since her release, Petitioner has been working and living with her wife in the United States while awaiting her reasonable fear interview with USCIS. (*Id.* ¶ 7.)

On March 31, 2025, and April 23, 2025, Petitioner requested via email that Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") consider reprocessing her case from reinstatement to INA § 240 removal proceedings in line with a CBP policy memo regarding linking and processing family groups. (*Id.* ¶ 8.) Petitioner received no response. (*Id.* ¶¶ 8, 9.) On May 22, 2025, during Petitioner's regularly scheduled ICE check-in, Petitioner again made her request directly to the deportation officer. (*Id.* ¶ 9.) The deportation office instructed Petitioner to return on June 25, 2025, for a decision. (*Id.*)

On June 25, 2025, Petitioner returned to receive the decision and was detained. (*Id.* ¶ 10.) When asked why she was being detained, Petitioner was informed ICE could "redetermine custody at any time" and Petitioner was an "enforcement priority." (*Id.*) Petitioner has no criminal history and has complied with every OSUP requirement. (*Id.* ¶¶ 7, 8.)

Petitioner has remained detained since June 25, 2025. (*Id.* ¶ 11.) Around October 1, 2025, Petitioner was transferred from the Mesa Verde ICE Processing Center to California City, California Detention Center in Kern County. (*Id.* ¶ 13.) While Petitioner was detained, she received a positive reasonable fear determination from USCIS. (*Id.* ¶ 11.) On September 9, 2025, Petitioner attended an individual merits proceeding before an Immigration Judge who was subsequently fired. (*Id.*) The Executive Office of Immigration Review reset Petitioner's case to November 6, 2025, and then proceeded to cancel and reset the case three times. (*Id.* ¶ 12.) Petitioner's case is currently scheduled for January 26, 2026. (*Id.*)

On November 12, 2025, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.)

The same day, Petitioner filed a motion for a TRO. (ECF No. 2.)

## II. STANDARD OF LAW

For a TRO, courts consider whether Petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

## III. ANALYSIS[1]

### A. Likelihood of Success on the Merits

Petitioner has established a likelihood of success on her due process claim.[2] The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States,

---

[1] The Court finds Petitioner has met the requirements for issuing a temporary restraining order without notice. *See* Fed. R. Civ. P. 65(b). Petitioner notified Respondents via email on November 12, 2025 that she would be filing the motion. (ECF No. 2-3 at 2.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

[2] As described further below, because the Court finds Petitioner has sufficiently established a TRO is warranted based on her due process claim, the Court does not analyze Petitioner's other claim for unlawful revocation of her order of supervision in violation of 8 C.F.R. § 241.4(1).

1  regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due
2  Process Clause applies to all "persons" within the United States, including noncitizens, whether
3  their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights
4  extend to immigration proceedings.  *Id.* at 693–94.

5      Courts examine procedural due process claims in two steps: the first step asks whether
6  there exists a protected liberty interest under the Due Process Clause, and the second step
7  examines the procedures necessary to ensure any deprivation of that protected liberty interest
8  accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454,
9  460 (1989).

10      As for the first step, the Court finds Petitioner has raised serious questions as to whether
11  she has protectable liberty interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025
12  WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's
13  freedom is authorized by statute, that person may retain a protected liberty interest under the Due
14  Process Clause").  As stated, Petitioner was released subject to an OSUP in May 2022.  (ECF No.
15  2 ¶ 6.)  For over three years, Petitioner remained out of custody without incident and in
16  compliance with her OSUP.  (*Id.* ¶¶ 7, 8.)  It is clear to this Court, as it has been to many other
17  courts in this district when confronted with similar circumstances, that Petitioner has a clear
18  interest in her continued freedom.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D.
19  Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community
20  for over five years strengthened petitioner's liberty interest).

21      As to the second step – what procedures or process is due – the Court considers three
22  factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an
23  erroneous deprivation of such interest through the procedures used, and the probable value, if any,
24  of additional or substitute procedural safeguards;" and (3) "the Government's interest, including
25  the function involved and the fiscal and administrative burdens that the additional or substitute
26  procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set
27  forth below, the Court finds Petitioner has established her due process rights were likely violated.
28      First, Petitioner has a substantial private interest in remaining free from detention.  Prior

1    to her detainment, Petitioner had been out of custody for more than three years during which she
2    was lawfully, gainfully employed and free to marry and be with the woman of her choice. (ECF
3    No. 2 ¶ 35.) Her detention denies her this freedom.
4         Second, the risk of erroneous deprivation is considerable given Petitioner has not received
5    any bond or custody redetermination hearing. "Civil immigration detention, which is nonpunitive
6    in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the
7    community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at
8    *4 (E.D. Cal. Sept. 9, 2025) (internal quotation and citation omitted). Petitioner has no criminal
9    history and represents she has attended every requisite check-in as mandated under her OSUP.
10   (ECF No. 2 ¶¶ 7, 8.) Without any procedural safeguards to determine whether her detention was
11   justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL
12   2617255, at *4.
13        Finally, the Government's interest is low, and the effort and cost required to provide
14   Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-
15   TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). The Government was in the
16   process of providing a determination on the merits until it terminated the Immigration Judge who
17   heard Petitioner's case. (ECF No. 2 ¶ 11.) The Government cannot shield itself from a
18   constitutional crisis of its own making. Nor can the Government credibly claim it is burdened by
19   the minimal procedural safeguards to which Petitioner is entitled. Indeed, it would be less of a
20   fiscal and administrative burden for the Government to return Petitioner home to await a
21   determination on her asylum case than to continue to detain her.
22        On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due
23   process – a hearing to determine whether her detention was warranted. Accordingly, with respect
24   to her due process claim, Petitioner has shown she is likely to succeed on the merits.
25            B.    <u>Irreparable Harm</u>
26        Petitioner has also established she will suffer irreparable harm in the absence of a TRO.
27   The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration
28   detention," including "the economic burdens imposed on detainees and their families as a result

5

of detention[.]" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).  Such harm is present here.  Petitioner has been detained for over five months and has lost the opportunity to seek gainful employment under her valid employment authorization card.  (ECF No. 2 ¶ 19.)  She argues she can no longer support her wife financially nor emotionally.  (*Id.*)  Further, Petitioner contends her anxiety is so severe she was transferred from her detention cell to a medical unit after having chest pains.  (*Id.* ¶ 20; ECF No. 1-2.)  She also has severe allergies which make it difficult to breathe.  (ECF No. 2 ¶ 21.)  Even if this was not sufficient to establish irreparable harm, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

C.   Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  Petitioner argues there is no equitable reason that would tip the balance in the Government's favor.  (ECF No. 2 ¶ 35.)  Additionally, Petitioner argues the public interest weighs in her favor because "[a]rbitrary detention impacts both an individual right to physical freedom and a collective right of the people to security against unjustified government intrusion." (*Id.* ¶ 37.)  The Court agrees with Petitioner.  First, it is clear on this record that the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).

In sum, these last two factors also weigh in Petitioner's favor.  Therefore, the Court GRANTS Petitioner's Motion for a TRO.  (ECF No. 2.)

**IV.  CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order (ECF No. 2) is GRANTED;

2. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011);

3. Petitioner Xochilth Berrios Berrios shall be released immediately from Respondents' custody.  Respondents shall not impose any additional restrictions on her, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing;

4. Respondents are enjoined and restrained from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including notice and a hearing before a neutral fact-finder where the Government shall bear the burden of proving Petitioner poses a danger to the community or a flight risk, and Petitioner shall be allowed to have her counsel present;

**5.** Respondents are ordered to show cause before this Court why a preliminary injunction should not issue requiring Respondents to continue to abide by this Court's order.  The hearing on the order to show cause will be held on **Thursday, November 20, 2025, at 10:30 a.m.** in Courtroom 2.  Respondents shall file responsive papers on **Monday, November 17, 2025, by 5 p.m.**  Petitioner may file a reply, if any, by **Wednesday, November 19, 2025, by 12 p.m.**

6. Petitioner is ordered to serve this Temporary Restraining Order and Order to Show Cause and all supporting pleadings and papers on **Respondents by 5:00 p.m. on November 13, 2025**.

7. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice or such shorter notice as the Court may allow.  Fed. R. Civ. P. 65(b)(4).

IT IS SO ORDERED.

Date: November 13, 2025

Troy L. Nunley
Chief United States District Judge