1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11    XOCHILTH BERRIOS BERRIOS,

12              Petitioner,                         No. 1:25-cv-01544-TLN-CSK

13

14         v.                                       **ORDER**

15    SERGIO ALBARRAN et al.,[1]

16              Respondents.

17

18         This matter is before the Court on Petitioner Xochilth Berrios Berrios's ("Petitioner")

19    Motion for a Preliminary Injunction ("PI").  (ECF No. 2.)  On November 13, 2025, the Court

20    granted Petitioner's Motion for a Temporary Restraining Order ("TRO") and issued an order to

21    show cause as to why a PI should not issue on the same terms.  (ECF No. 5.)  Respondents filed a

22    response (ECF No. 8), and Petitioner filed a reply (ECF No. 10).  For the reasons set forth below,

23    the Court now GRANTS Petitioner's Motion for a PI as follows.

24

25    ───────────────────────
      [1]      In a footnote, Respondents seek to "strike and dismiss all unlawfully named officials
26    under § 2241."  (ECF No. 8 at 1 n.1.)  The request, as made, is improper.  If Respondents seek to
      dismiss other respondents from this action, they must do so in a properly noticed motion.  *See*
27    *Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025)
      ("[A] request for court order must be made by motion.  As a result, a request for affirmative relief
28    is not proper when raised for the first time in an opposition.").

                                                    1


1  **I.   FACTUAL AND PROCEDURAL BACKGROUND**

2  The Court previously articulated the factual and procedural background in this case.  (ECF

3  No. 5.)  For clarity, the Court reiterates and expands on the following here: Petitioner is a thirty-

4  nine-year-old native and citizen of Nicaragua.  (ECF No. 2 ¶ 5.)  In July 2007, Petitioner entered

5  the United States by crossing the Rio Grande River near Hidalgo, Texas.  (ECF No. 8-1 at 5.)

6  Shortly thereafter, Petitioner was apprehended by U.S. Customs and Border Protection ("CBP")

7  and processed for expedited removal.  (*Id.* at 2–3.)  Petitioner departed the United States subject

8  to the removal order in August 2007.  (*Id.* at 7.)

9  Petitioner re-entered the United States with her wife in April 2022.  (ECF No. 2 ¶ 5; ECF

10  No. 8-1 at 3.)  Petitioner was processed for reinstatement of removal.  (ECF No. 2 ¶ 5; ECF No.

11  8-1 at 9.)  Petitioner claimed she feared being returned to Nicaragua given her membership in the

12  LGBTQ community and due to her political opinion.  (ECF No. 2 ¶ 6.)  CBP referred her case to

13  U.S. Citizenship and Immigration Services ("USCIS") and released her from custody on interim

14  parole under an Order of Supervision ("OSUP") in May 2022.  (*Id.*; ECF No. 8-1 at 3.)  After her

15  release, Petitioner worked and lived with her wife in the United States while awaiting her

16  reasonable fear interview with USCIS.  (ECF No. 2 ¶ 7.)

17  On March 31, 2025, and April 23, 2025, Petitioner requested via email that Immigration

18  and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") consider

19  reprocessing her case from reinstatement to Immigration and Nationality Act § 240 removal

20  proceedings in line with a CBP policy memo regarding linking and processing family groups.

21  (*Id.* ¶ 8.)  Petitioner received no response.  (*Id.* ¶¶ 8, 9.)  On May 22, 2025, during Petitioner's

22  regularly scheduled ICE check-in, Petitioner again made her request directly to the deportation

23  officer.  (*Id.* ¶ 9.)  The deportation officer instructed Petitioner to return on June 25, 2025, for a

24  decision.  (*Id.*)

25  On June 25, 2025, Petitioner returned to receive the decision and was detained.  (*Id.* ¶ 10.)

26  When asked why she was being detained, Petitioner was informed ICE could "redetermine

27  custody at any time" and Petitioner was an "enforcement priority."  (*Id.*)  Petitioner has no

28  criminal history and has complied with every OSUP requirement.  (*Id.* ¶¶ 7, 8.)

1    After approximately three months of detention, around October 1, 2025, Petitioner was

2    transferred from the Mesa Verde ICE Processing Center to California City, California Detention

3    Center in Kern County.  (*Id.* ¶ 13.)  While Petitioner was detained, she received a positive

4    reasonable fear determination from USCIS, which placed her into withholding only proceedings

5    before an Immigration Judge.  (*Id.* ¶ 11; ECF No. 1 ¶ 32.)  On September 9, 2025, Petitioner

6    attended an individual merits proceeding before an Immigration Judge who was subsequently

7    fired.  (ECF No. 2 ¶ 11.)  The Executive Office of Immigration Review reset Petitioner's case to

8    November 6, 2025, and then proceeded to cancel and reset the case three times.  (*Id.* ¶ 12.)

9    Petitioner's case is currently scheduled for January 26, 2026.  (*Id.*)

10    On November 12, 2025, Petitioner filed a petition for writ of habeas corpus.  (ECF No. 1.)

11    The same day, Petitioner filed a Motion for a TRO and a PI.  (ECF No. 2.)  On November 13,

12    2025, the Court granted the TRO, released Petitioner, and issued an order to show cause as to

13    why a PI should not issue on the same terms.  (ECF No. 5.)  Respondents filed a response (ECF

14    No. 8), and Petitioner filed a reply (ECF No. 10).  The Court held a hearing on November 20,

15    2025.  (ECF No. 11.)  The parties subsequently met and conferred regarding a proposed remedy

16    but later filed a joint statement indicating they had been unable to reach a resolution.  (ECF No.

17    13.)

18    **II.    STANDARD OF LAW**

19    A preliminary injunction is an extraordinary remedy.  In general, preliminary injunctions

20    are governed by the same standard applicable to temporary restraining orders.  *Aiello v. One West*

21    *Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092, at *1 (E.D. Cal. Jan. 29, 2010) (internal

22    citations omitted); *see also* E.D. Cal. L.R. 231(a).

23    For both a TRO and PI, courts consider whether Petitioner has established: "[1] that [s]he

24    is likely to succeed on the merits, [2] that [s]he is likely to suffer irreparable harm in the absence

25    of preliminary relief, [3] that the balance of equities tips in h[er] favor, and [4] that an injunction

26    is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner

27    must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v.*

28    *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a petitioner's motion, a district court

1   may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A

2   stronger showing on the balance of the hardships may support issuing a PI even where the

3   petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also

4   shows that there is a likelihood of irreparable injury and that the injunction is in the public

5   interest."  *Id.*  Simply put, Petitioner must demonstrate, "that [if] serious questions going to the

6   merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in

7   order to succeed in a request for a preliminary injunction.  *Id.* at 1134–35.

8          **III.    ANALYSIS**

9                 A.       Likelihood of Success on the Merits

10         The Fifth Amendment Due Process Clause prohibits government deprivation of an

11  individual's life, liberty, or property without due process of law.  *Hernandez v. Session*, 872 F.3d

12  976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of

13  the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)

14  ("[T]he Due Process Clause applies to all "persons" within the United States, including

15  noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").  These

16  due process rights extend to immigration proceedings.  *Id.* at 693–94.  Courts examine procedural

17  due process claims in two steps: the first asks whether there exists a protected liberty interest

18  under the Due Process Clause, and the second examines the procedures necessary to ensure any

19  deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of*

20  *Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

21         The Court previously found Petitioner raised serious questions as to whether she has a

22  protectable liberty interest and finds no reason to conclude otherwise now.[2]  (*See* ECF No. 5.)

23  Respondents oppose a PI insofar as it would prevent Petitioner's removal or Petitioner's

24  temporary detention to effectuate her removal should her removal become ripe.[3]  (ECF No. 8 at

25  [2]     As such, the Court does not analyze Petitioner's other claim for unlawful revocation of her

26  OSUP in violation of 8 C.F.R. § 241.4(l).  The Court notes for the record the parties agree 8
    C.F.R. § 241.4(l) is the correct regulatory standard for revocation of an order of supervision in

27  Petitioner's circumstances.  (ECF No. 13 at 1–2.)

28  [3]     In reply, Petitioner does not directly address Respondents arguments but instead posits a

2.) However, this PI only requires Respondents to follow the requisite statutory and

constitutional due process requirements. *See Phouvieng v. Andrews*, No. 1:25-CV-01512-KES-

SAB (HC), 2025 WL 3265504, at \*7 (E.D. Cal. Nov. 24, 2025) (requiring pre-deprivation hearing

where petitioner was released from detention on order of supervision and had an order of

removal); 8 C.F.R §§ 241.4(l), 241.13 (outlining procedures and standards for revocation of

release). It does not prevent Petitioner's removal should such removal become ripe. To that end,

the Court has clarified the injunctive remedy ordered below to track closely with requisite

regulatory and constitutional requirements. Absent further opposition, the Court finds no reason

to depart from its prior analysis and adopts it here.

### B.    Irreparable Harm

Petitioner has also established she will suffer irreparable harm in the absence of a PI,

which Respondents do not appear to contest. The Ninth Circuit recognizes "irreparable harms

imposed on anyone subject to immigration detention," including "the economic burdens imposed

on detainees and their families as a result of detention[.]" *Hernandez v. Sessions*, 872 F.3d 976,

995 (9th Cir. 2017). As found previously, such harm is present here. Petitioner was detained for

over five months and lost the opportunity to seek gainful employment under her valid

employment authorization card. (ECF No. 2 ¶ 19.) She claimed she could no longer support her

wife financially nor emotionally and her anxiety was so severe she was transferred from her

detention cell to a medical unit after having chest pains. (*Id.* ¶ 20; ECF No. 1-2.) She also has

severe allergies which made it difficult to breathe. (ECF No. 2 ¶ 21.) As stated, even if this was

not sufficient to establish irreparable harm, "[i]t is well established that the deprivation of

constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695

F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

///

///

novel jurisdictional claim that Respondents' opposition grants this Court jurisdiction to declare
the expedited removal order legally invalid. (ECF No. 10 at 8.) At the hearing, Petitioner
conceded the Court does not need to decide this issue. The Court therefore does not.

1              C.      Balance of Equities and Public Interest

2          As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the

3    balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F.

4    Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092

5    (9th Cir. 2014)).  Petitioner argues there is no equitable reason that would tip the balance in the

6    Government's favor.  (ECF No. 2 ¶ 35.)  Additionally, Petitioner argues the public interest

7    weighs in her favor because "[a]rbitrary detention impacts both an individual right to physical

8    freedom and a collective right of the people to security against unjustified government intrusion."

9    (*Id.* ¶ 37.)  The Court agrees with Petitioner.  First, it is clear on this record that the balance of

10   equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is

11   harmed in any legally cognizable sense by being enjoined from constitutional violations."

12   *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in

13   the public interest to prevent the violation of a party's constitutional rights."  *Melendres*, 695 F.3d

14   at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration

15   detention are staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D.

16   Cal. June 14, 2025) (internal citation omitted).

17         In sum, these last two factors also weigh in Petitioner's favor.  Therefore, the Court

18   GRANTS Petitioner's Motion for a PI.  (ECF No. 2.)

19         **IV.    CONCLUSION**

20         Accordingly, IT IS HEREBY ORDERED:

21    1.  Petitioner's Motion for a PI (ECF No. 2) is GRANTED;

22    2.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts

23        regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015

24        (9th Cir. 2011);

25    3.  Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining

26        Petitioner absent compliance with constitutional and regulatory protections, including

27        notice and a hearing before a neutral fact-finder where Respondents show: (a) there are

28        material changed circumstances which demonstrate that there is a significant likelihood of

6

Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk such that danger.  At any such hearing, Petitioner shall be allowed to have her counsel present; and

4.  Pursuant to Local Rule 302(c)(17), future matters pertaining to Petitioner's Motion for Habeas Corpus under 28 U.S.C. § 2241 are automatically referred to the magistrate judge assigned to this matter.

IT IS SO ORDERED.

Date: December 4, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

7